FILED
2011 Jul-20  AM 08:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **BARBARA ANN WILSON,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NO.** |
| **v.** | ) | |
| | ) | **CV-10-KOB-2386** |
| **CITY OF BIRMINGHAM, et al.,** | ) | |
| **Defendants.** | ) | |

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Fredric L. Fullerton, II
Assistant City Attorney
Attorney for Defendants

**CITY OF BIRMINGHAM
DEPARTMENT OF LAW**
710 North 20th Street
600 City Hall Building
Birmingham, Alabama 35203
(205) 254-2369
(205) 254-2502 Fax

# **TABLE OF CONTENTS**

TABLE OF CONTENTS .......................................................... .1

STATEMENT OF THE FACTS.................................................2

SUMMARY JUDGMENT STANDARD.................................6

ANALYSIS OF PLAINTIFF'S CLAIM AND ARGUMENT .................................9

CONCLUSION .....................................................................31

CERTIFICATE OF SERVICE ...............................................31

1

## STATEMENT OF THE FACTS

1.   The Plaintiff, Barbara Ann Wilson, hereinafter ("Wilson" or "Plaintiff"), is an African-American female that works for the Birmingham Public Library ("Library"). (Exh. 1, p.16).

2.   Wilson is employed as a Librarian II from 2002 to current. She was promoted to Librarian III on or about June 2009. (Exh.1, p.16).

3.   Wilson worked in the Business, Science and Technology section at the Linn Henley and East Building located at 2100 Park Place, Birmingham, Alabama 35203. ("Downtown Branch") (Exh. 1, p.18).

4.   The Defendants are the City of Birmingham ("City") and the Birmingham Library Board ("Board"). (*Complaint*).

5.   The City is a municipal corporation under the laws of the State of Alabama. (*Complaint*).

6.   The Board consists of ten (10) members that are appointed without pay by the Birmingham City Council to manage the assets, employees and property on behalf of the City. The Board is composed of President Gwendolyn Webb, Vice President Dora Sims, Attorney Samuel Rumore, Presiding Circuit Judge J. Scott Vowell, Circuit Judge Shanta Owens, Nell Allen, Gwendolyn R. Amamoo, Georgia Morgan Blair, Reverend Anthony Alann Johnson and Katrina Michelle

2

Watson. (Exh. 4, see also www.bplonline.org)

7.  The Library and the Board are considered a Department of the City. (Exh. 3, p.10, 11)

8.  The Library is a public facility which on a yearly basis has an average of about 440,000 people entering the downtown branch. (Exh. 2, p 319-322, Defendants' Exh. 4).

9.  Plaintiff claims that she is a victim of a sexually hostile environment in two ways: 1. Random patrons are using the Library's computers to view pornographic images and 2. Random patrons are entering the Library and committing obscene sexual acts. (Exh. 1, p.35-36; *Complaint, paragraphs 18, 19, 20*).

10.  The Plaintiff does not allege co-employees (i.e. librarians, security, etc.) are creating a sexually hostile environment. (Exh. 1, p.35-36; *Complaint, paragraphs 18, 19, 20*).

11.  Plaintiff alleges she was in a hostile sexual environment based on three (3) reported sexual based incidents involving her in the downtown branch from 2009 to 2010. (Exh. 1, p. 67-93; Attached Exh. 5)

12.  The Library has an internet use policy and a patron behavior policy. (Exh. 1,

p.36-39; Exh. 2, p. 312-319, Defendants' Exhs. 1, 2, 3, See also www.bplonline.org).

13.  Since 2001, the Library has a policy that informs its employees that working in a public facility they may encounter pictures, acts, sounds, etc. including internet access that may be objectionable to them.  (Exh. 2, p. 312-319, Defendants' Exhibit 1, 2, 3)

14.  Patrons wanting to access the internet services at the Library are required to accept the policies that they will not violate the criminal laws of the State of Alabama and view pornographic websites.  (Exh. 1, p. 40-59; Exh. 2, p. 312-319).

15.  The Library has used filtration software since 1998.  The Library has updated its software over the years. The Library currently uses *8e6.com* and *Cybrary.net* to stop access to pornographic websites by patrons.  (Exh. 1, p. 40-59; Exh. 2, p. 312-319).

16.  The Library has security employed at the downtown branch, cameras and incident reporting program. (Exh. 2, p. 86-102, 108-131).

17.  The City and the Board have disseminated written policies prohibiting sex discrimination, harassment and retaliation.  (Exh. 2, p. 312-319, Plaintiff's Exh.

2, 3, 5, 36)

18.     On October 7, 2009, Plaintiff filed an EEOC charge.  (Exh. 1, Attached Exh. 2).

19.     On September 2, 2010, the Plaintiff filed a Complaint in the U.S. District Court for the Northern District of Alabama.  (*Complaint*).

## SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56 (c), summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56 (c).  The party asking for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317,323 (1986) quoting Fed. R. Civ. P. 56 (c).  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  Celotex, 477 U. S. at 322-23.  There is no requirement, however, that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.  Id. at 323.

Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that

6

there is a genuine issue for trial. <u>Celotex</u>, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings.  Id at 324.  [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 248. [T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. Id. at 249.  His guide is the same standard necessary to direct a verdict: Whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.  Id. at 251-52; see also <u>Bill Johnson's Restaurants, Inc. v. NLRB,</u> 461 U.S. 731, 746 n. 11(1983)

(indicating the standard for summary judgment is [s]ubstantively ... very close to that for motions for directed verdict). However, the nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co., v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249-50 (citations omitted); accord Spence v. Zimmerman, 873 F. 2D 256 (11th Cir. 1989).

Furthermore, the court must view the evidence presented through the prism of the substantive evidentiary burden, so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F. 2d 570, 575 (11th Cir. 1988).  Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are functions of the jury, and, therefore, [t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.  The nonmovant need not be given the benefit of every inference but only of every reasonable inference.  Brown v. Clewiston, 848 F. 2d 1534, 1540 n. 12 (11th Cir. 1988).

8

## ANALYSIS OF PLAINTIFF'S CLAIM AND ARGUMENT

Plaintiff's sole claim against the City and the Board are brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et. seq.* and the Civil Rights Act of 1991.  The basis for the Federal Constitutional claim against the City and the Board is:

> **"COUNT ONE, TITLE VII - Sexual Harassment, (Hostile Work Environment)** The above-described wrongful conduct on the part of the Defendants constitutes the creation and/or allowance of a sexually charged hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et. seq.* and the Civil Rights Act of 1991." (Complaint, p. 4)

## Birmingham Library Board

As an initial matter, the Defendant, the Board, is not a separate legal entity.  The Library, which is operated by the Board, is administrative division or department of the City of Birmingham.  As such, a department is not a legal entity subject to suit in its own capacity.

First, the Plaintiff testified that she was paid by the City and was employed by the City. (Exh. 1, p.103; Exh. 3, p 8-9).  Pursuant to the Birmingham City Code, Section 2-5-71 et. al., the Board members are appointed by the Birmingham City Council to maintain, operate and control the assets, property, employees, etc. of the Birmingham Public Library on behalf of the City.  (Exh. 2, p. 40-44, 49; Exh. 4)  The Deputy Director of Personnel for the City, Barry Lollar, stated that the Library is

considered a Department of the City of Birmingham and is treated as such. (Exh. 3, p.10). All operating funds to the Library are provided by the City. (Exh. 2, p. 40-44; Exh. 3, p. 11). The Library's budget is presented by the Board to the Mayor on a yearly basis and approved by the City Council as part of the normal budgetary process. The Library and Board maintain no independent assets. (Exh. 2, p.40-44; Exh. 4).

By all accounts and the evidence, the Library and its operating Board are a Department of the City, no different than the Birmingham Fire and Rescue Department or the Birmingham Police Department. White v. Birchfield, 582 So. 2nd 1085, (Ala. 1991), Dean v. Barber, 951 F.2d 1210 (11th Cir. 1992). The Title VII claim against the Board is due to be dismissed.

## I.    **FEDERAL CONSTITUTIONAL TITLE VII CLAIM**

### A.    **Statute of Limitations**

If any of Wilson's claims predate her EEOC charge by more than 180 days, calculated from the date the claim was filed, they are time-barred. In the instant case the Title VII claim was filed with the EEOC on October 7, 2009. (Exh. 1, attached Defendant's Exh. 2). The Court should only consider allegations of sexual hostile conduct that occurred on or after April 10, 2009. Any such incidents or claims before April 10, 2009 would have been separate and discrete acts, for which plaintiff did not timely file suit. Thomas v. Kroger Co., 24 F.3rd 147 (11th Cir. 1994); Jones v. Preuit

& Mauldin, 876 F.2d 1480 (11th Cir. 1989).  Plaintiff's incidents, allegations or complaints of 2007 and 2008 are not viable.

**B.    Title VII Claim - Law**

Generally, to begin several core principles of employment discrimination law must be stated: first, to prove a hostile work environment under 42 U.S.C. § 2000e-2(a)(1), a plaintiff must show that her employer discriminated because of her membership in a protected group, and that the offensive conduct was either severe or pervasive enough to alter the terms or conditions of employment; second, Title VII is not a civility code, and not all profane or sexual language or conduct will constitute discrimination in the terms and conditions of employment.  In determining whether a plaintiff has proven a hostile work environment, third, workplace conduct is not measured in isolation; rather, the evidence of harassment is considered both cumulatively and in the totality of the circumstances.

To prove a hostile work environment, the plaintiff must show:  (1) that she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been directly based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive

working environment; and (5) a basis for holding the employer liable. <u>Mendoza v. Borden, Inc.</u>, 195 F.3d 1238, 1245 (11th Cir.1999) (en banc) (citation omitted), <u>Reeves v. C.H. Robinson Worldwide, Inc.</u> ,594 F.3d 798 (11th Cir.  Jan. 20, 2010).

In evaluating allegedly discriminatory conduct, for purposes of determining whether it constitutes a hostile work environment, courts consider its frequency, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance.  In determining whether a plaintiff has established a claim of hostile work environment under Title VII, the objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances.

"Workplace conduct is not measured in isolation." <u>Clark County Sch. Dist. v. Breeden</u>, 532 U.S. 268, 270, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (per curiam). Rather, the evidence of harassment is considered both cumulatively and in the totality of the circumstances. <u>Mendoza</u>, 195 F.3d at 1242.  Either severity or pervasiveness is sufficient to establish a violation of Title VII. See, e.g., <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 743, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) (noting that hostile work environment claims "require harassment that is severe or pervasive"). In evaluating allegedly discriminatory conduct, we consider its "frequency ...; its severity;

whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23, 114 S.Ct. 367, quoted in Mendoza, 195 F.3d at 1258 (Tjoflat, J., concurring in part, and dissenting in part).

In particular, sexual language and discussions that truly are indiscriminate do not themselves establish sexual harassment under Title VII. The Supreme Court has "never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations." Id. at 80, 118 S.Ct. 998. Title VII's test instead is whether "members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Id. (quoting Harris, 510 U.S. at 25, 114 S.Ct. 367 (Ginsburg, J., concurring)).

Likewise, the Courts of Appeals have uniformly observed that Title VII is not a civility code, and that harassment must discriminate on the basis of a protected characteristic in order to be actionable. See, e.g., Lee-Crespo v. Schering-Plough Del Caribe Inc., 354 F.3d 34, 37 (1st Cir.2003); Petrosino v. Bell Atlantic, 385 F.3d 210, 223 (2d Cir.2004); Abramson v. William Paterson College of N.J., 260 F.3d 265, 280 (3d Cir.2001); Ziskie v. Mineta, 547 F.3d 220, 228 (4th Cir.2008); Indest v. Freeman Decorating, Inc., 164 F.3d 258, 263-64 (5th Cir.1999); Clark v. United Parcel Serv.,

13

Inc., 400 F.3d 341, 352 (6th Cir.2005); Stephens v. Erickson, 569 F.3d 779, 790 (7th Cir.2009); Anderson v. Family Dollar Stores of Ark., Inc., 579 F.3d 858, 862-63 (8th Cir.2009); Manatt v. Bank of Am., NA, 339 F.3d 792, 798 (9th Cir.2003); Etsitty v. Utah Transit Auth., 502 F.3d 1215, 1220-21 (10th Cir.2007); Davis v. Coastal Int'l. Sec., Inc., 275 F.3d 1119, 1123-24 (D.C.Cir.2002).

Moreover, the plaintiff must prove that the environment was both subjectively and objectively hostile. Id. at 21-22, 114 S.Ct. 367. "The employee must 'subjectively perceive' the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable." Mendoza, 195 F.3d at 1246 (quoting Harris, 510 U.S. at 21-22, 114 S.Ct. 367). "So long as the environment would reasonably be perceived, and is perceived, as hostile or abusive, there is no need for it also to be psychologically injurious." Harris, 510 U.S. at 22, 114 S.Ct. 367 (citation omitted). "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.' " Oncale, 523 U.S. at 81, 118 S.Ct. 998 (quoting Harris, 510 U.S. at 23, 114 S.Ct. 367).

## C.  **Argument**

This is a unique case.  The Plaintiff works at the Birmingham Public Library which is a public facility whose primary purpose is to proved services to the public, no

14

different than a city hall or a courthouse.  The Plaintiff does not allege a sexually

hostile environment based on the actions of her co-employee(s) at the Birmingham

Public Library, but instead random, at times unidentifiable, patrons that are entering

the library and using the Library's computers to view pornographic images and random

patrons entering the Library and committing obscene sexual acts.  (Exh. 1, p.35-36;

*Complaint, paragraphs 18, 19, 20*).

Under the normal case, as stated above, to prevail on a claim of hostile work

environment, the complaining employee must demonstrate that she was targeted based

on membership in a protected group (i.e., based on race, gender, or religion); that the

harassment was pervasive and severe; and that a reasonable person, and not just the

complaining employee, would conclude that the harassment was pervasive and severe.

Of note, no court to date has specifically outlined or considered the elements of

a sexually hostile environment caused by random patrons at a public facility.  Further,

no court to date has held that images on an Internet screen alone are sufficient to create

a hostile work environment.   With that, using the current elements, the Defendants

argue that the Plaintiff fails to prove that she meets the following requirements in this

matter: (3) that the harassment must have been directly based on the sex of the

employee; (4) that the harassment was sufficiently severe or pervasive to alter the

terms and conditions of employment and create a discriminatorily abusive working

environment.

To begin, the following are sexual and non-sexual incidents reported by the Plaintiff and other individuals using the Library's incident reporting system at the downtown branch from 2007-2011. (Exh. 1, Defendants' attached Exh. 5; Exh. 2, Plaintiff's attached Exh. 33):

## **Incidents reported by Plaintiff Barbara A. Wilson- 2007-2011**

**2007**

Victim: Barbara Wilson
September 14, 2007
Incident: Ms. Wilson became sick due to low blood sugar; did not go to the hospital (non-sexual) (*time-barred*)

**2008**

Victim: Barbara Wilson
December 2, 2008
Incident: Male patron attempted to rub up against the victim (*time-barred*)

Victim: Barbara Wilson
December 2, 2008
Incident: Male tried to touch Barbara Wilson (*time-barred*)

**2009**

**Victim: Barbara Wilson**
**October 12, 2009**
**Incident: Suspect came to 3rd floor of the library and viewed pornographic images on the computer**

Victim: Barbara Wilson
Incident: a loud speaking patron approached Ms Wilson; she could not help him, he got

upset and cussed at another employee who interrupted to try and help out (non-sexual)

## 2010

**Victim: Barbara A. Wilson/patrons**
**January 8, 2010**
**Incident: Male stimulating his private parts while looking at two young girls.**

May 25, 2010
Incident: Librarian Karen Jackson witness William Pritchette harassing Barbara Wilson concerning unrelated library questions (non-sexual)

Reported by: Barbara Wilson
September 17, 2010
Incident: a patron was belligerent w/ Ms. Wilson after she asked the patron to lower her voice while using her cell phone. (non-sexual)

**Victim: Barbara Wilson**
**November 19, 2010**
**Wilson stated that patron Mr. Jerome Culver harassed her when he said to her, "you are a pretty lady"**

## 2011

None

## Incidents reported by all others at Birmingham Public Library-2007-2011

## 2007

Victim: Karen Jackson (Librarian)
February 2007
Incident: Patron wrote a note to Ms. Jackson stating "you are a very beautiful woman"

Victim: Samone Stevenson (patron)
July 24, 2007
Incident: Male patron stood in her presence w/ zipper open exposing himself.

**2008**

Victim: S. Booker (patron)
April 7, 2008
Incident: Patron touched and pinched her on the cheek

Victim; Ebonee Mason (patron)
July 14, 2008
Incident: Patron exposed himself to Ms. Mason.

Victim: not listed
October 1, 2008
Incident: Officer Ben Williams warned unnamed patron about watching pornography on the computer

Victim: not listed
October 8, 2008
Incident: Officer Ben Williams escorted an unnamed patron out of library, watching pornography on the computer

Victim: Other patrons "young girls" (patron)
November 8, 2008
Incident: A man harassing young girls

Victim: General public and/or patrons (patron)
November 15, 2008
Incident: Patron was seen exposing himself in BST dept.

Victim: General public and/or patrons (patron)
November 29, 2008
Incident: Male in youth dept. hid between bookshelves with his pants down masturbating

**2009**

Victim: General public and/or patrons (patron)
October 18, 2009
Incident: Patron watching pornography in Art dept./asked to leave by security.

Victim: Alisha Johnson (librarian) (*time-barred*)
January 7, 2009
Incident: patron harassed Ms. Johnson, escorted out by security.

Victim: Patron complaint (patron)
April 21, 2009
Incident: Male masturbating in the urinal, escorted out by security.

Victim: Patron complaint (patron)
June 7, 2009
Incident; patron exposed himself on 3rd floor of library, escorted out by security.

Victim: Mary Anne Ellis (librarian)
June 18, 2009
Incident: Patron visits library and stares at Ms. Ellis and makes her uncomfortable.

Victim: security daily activity sheet
June 7, 2009
Incident: Patron was escorted out by security because of viewing pornography.

Victim: Tiffany West (librarian)
July 16, 2009
Incident: Male followed her into library and harassed her, asked to date her, and grabbed her arm, escorted out by security.

Victim: general public (patron)
October 27, 2009
Incident: Edward C. Davidson was watching porn on the 3rd floor computer. Escorted out of library by security, banned from library.

## 2010

Victim: Candice Hardy (librarian)
June 11, 2010
Incident: Mr. Tyron D. Terrell left a letter for Ms. Hardy asking her to be his friend.

Victim: Karen Jackson (librarian)
July 26, 2010

Incident: female patron cussed at Ms. Jackson because she could not assist her timely.

Victim: Brandi Campbell Leigh (Patron)
November 24, 2010
Incident: Black male grabbing his crotch as women walked by on 2nd floor.

Victim: Birmingham Public Library
November 30, 2010
Incident: Alfred Nettles was banned from BPL system for prior incident of sexual misconduct.

Victim: Birmingham Public Library
December 06, 2010
Incident: Rex Chatman checked out a laptop when he returned it porn was found on the computer screen.

## 2011

Victim: Michelle Kline (librarian)
January 16, 2011
Incident: patron (homeless) tried to hug her in the crosswalk, she reported it to security

Victim: Bianca Ford (librarian)
January 24, 2011
Incident: man hiding between bookshelves was zipping his pants up and down while staring at Ms. Ford, escorted from library by security.

Victim: Jennifer Hancock (librarian)
January 25, 2011
Incident: Patron was reported to security by Hancock due to inappropriate behavior; not substantiated.

Victim: Karen Jackson (librarian)/Jennifer Hancock (librarian)
February 1, 2011 & February 2, 2011
Incident: Male was seen with his hands inside his pants and acting suspicious.

## 1.   Harassment not directed to Plaintiff based on her sex or gender

In the typical case, in order for the alleged harassment to be subject to Title VII, it must be based upon the plaintiff's sex. Mendoza, 195 F.3d at 1245. Although it is not the typical case, a sexual harassment claim can be based on offensive conduct which is not of a sexual nature but which is inflicted on an employee because of gender. Bell v. Crackin Good Bakers, Inc., 777 F.2d 1497, 1503 (11th Cir.1985) (holding that "threatening, bellicose, demeaning, hostile or offensive conduct by a supervisor in the workplace because of the sex of the victim" can be actionable.). Title VII prohibits discrimination, including harassment that discriminates based on a protected category such as sex. The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 25, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (Ginsburg, J., concurring)).

In this matter, the Plaintiff cannot present evidence that the alleged sexual harassment was focused or directed towards the Plaintiff because of her sex of gender. The actions of these random patrons are not directed towards the Plaintiff solely based on her gender or sex. Defendants would submit that the actions of these patrons in

viewing pornographic images or obscene acts are for their own self gratification, not because the Plaintiff is a female nor are they directed to the Plaintiff because she is female.  In general, as shown above, the incidents of random patrons were also directed at male librarians and male and female patrons at the library.  Moreover, the majority of incidents were reported by patrons, not by the plaintiff or other librarians.   The Plaintiff has failed to prove a violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et. seq.* and the Civil Rights Act of 1991.  As to the single Federal claim, summary judgment for the Defendants is appropriate.

## 2.    <u>Not Severe and Pervasive</u>

The Plaintiff cannot present evidence that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and created a discriminatorily abusive working environment.  A defendant in a hostile environment sexual harassment action may be able to establish a defense by showing that the alleged harassment was not severe or pervasive enough to create a hostile working environment.  Alleged harassment may not be sufficiently severe or pervasive to create a hostile environment where it was limited to isolated incidents.

Sexual harassment is actionable under Title VII only if it is so severe or pervasive as to alter conditions of victim's employment and create an abusive working environment. Civil Rights Act of 1964, § 703(a)(1), 42 U.S.C.A. § 2000e-2(a)(1).

Factors in whether workplace environment is sufficiently hostile or abuse to support sexual harassment claim under Title VII include frequency of discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with employee's work performance. Clark County School Dist. v. Breeden  532 U.S. 268, 121 S.Ct. 1508 (U.S.,2001). Further, the severe or pervasive standard of Title VII hostile work environment claim has objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive. McGullam v. Cedar Graphics, Inc., 609 F.3d 70 (2d Cir. 2010).

Courts have held that alleged harassment may not be sufficiently severe or pervasive to create a hostile environment where it was limited to isolated incidents. See, e.g., Jones v Flagship International, 793 F2d 714 (5th Cir Tex 1986) cert den 479 US 1065 (1987) [three incidents of advances or propositions]; Rennie v Dalton, 3 F3d 1100 (7th Cir Ind 19913) cert den (US) 114 SCt 1054, 127 LE2d 375 (1994) [isolated joke and conversation about strip bar, although in poor taste, were not persistent and did not poison workplace]; Weiss v Coca-Cola Bottling Co, 990 F2d 333 (7th Cir Ill 1993) [incidents in which supervisor asked plaintiff for dates, called her "dumb blond," put his hand on her shoulder, placed "I love you" signs in her work area, and attempted

to kiss her in bar were isolated and not serious]; Candelore v Clark County Sanitation District, 975 F2d 588 (9th Cir Nev 1992) [incidents of horseplay spread over several years were not sufficiently egregious]; Anderson v SUNY Health Science Center, 826 FSupp 625 (ND NY 1993) [isolated incident of sexual advances]; Carter v Caring for Homeless, 821 FSupp 225 (SD NY 1993) [isolated instances in which former paramour expressed continued affection for plaintiff were merely trivial fallout of faded affair]; Babcock v Frank, 729 FSupp 279 (SD NY 1990) [various instances of harassment, including occasional epithets, gag gift of red underwear at office party, and posting of pinup were isolated and not pervasive]; Pagana-Fay v Washington Suburban Sanitary Committee, 797 FSupp 462 (D Md 1992) [various isolated instances of obscene or sexually suggestive language or gestures]. Akonji v. Unity Healthcare, Inc., 517 F. Supp. 2d 83 (D.D.C. 2007). [Sexual harassment to which female employee allegedly was subjected, which consisted of five discrete acts of harassment, some of which included unwanted touching, as well as infrequent inappropriate comments and staring, was not so severe or pervasive as to alter conditions of her employment and create abusive work environment, and thus did not support hostile work environment claim under Title VII.] Sacco v. Legg Mason Inv. Counsel & Trust Co., N.A., 660 F. Supp. 2d 302 (D. Conn. 2009). [Three or four incidents during which employee saw image of nude woman on male coworker's

computer, abusive and obscene language by another manager in telephone conversations with ex-wife, and holiday cartoons delivered via e-mail with images of suggestive sexual conduct, were insufficient to indicate that workplace was permeated with discriminatory intimidation that was severe or pervasive so as to alter conditions of workplace, as required to support claim of hostile work environment.]

In a normal non-public setting, an employer can "monitor" the activities of its employees in regards to creating a hostile work environment. There is absolutely no way any employee of the library could determine if and when a patron would decide to violate the law and the Library's policies and attempt to view pornography or commit obscene acts. It appears that the Plaintiff argues that the Defendants are required to stop any and all crimes from taking place. Such a belief is impractical and impossible in a public setting such as the Library. The Library cannot restrict or bar individuals from the entering its property based on suspicion or speculation that they may violate the law and the library polices. The Library can only enforce after the patron has committed the incident.

In this matter, as shown above, in reviewing the total number of incidents involving the Plaintiff in which she claims it created a sexually hostile environment there were three (3) from 2009-2010. (Exh. 1, attached Exhibit 5, Exh. 2, attached Exh. 33). The Plaintiff complains of three (3) isolated random incidents over a two (2)

year time span. The incidents regarding the Plaintiff in 2007 and 2008 are time barred and cannot be considered.  Clearly, based on the above case law, these three (3) isolated random incidents would not be pervasive and severe.  Further, in light of the fact that the downtown branch on the average has about 440,000 people enter the facility on a yearly basis and roughly 6500 a month; these incidents would not be pervasive and severe. (Exh. 2, p 319-322, Defendants' Exh. 4).  As the Plaintiff claims patrons are creating the hostile environment, the total number of patrons entering the library would be relevant as evidence of harassment is considered both in frequency and in the totality of the circumstances.  The Plaintiff has failed to prove a violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et. seq.* and the Civil Rights Act of 1991.  As to the single Federal claim, summary judgment for the Defendants is appropriate.

**D.**    **Birmingham Public Library Polices in Effect**

One way of establishing an adequate response is to show that the defendant had established a policy or policies for dealing with sexual harassment, that the plaintiff utilized the policy, and that the defendant's established procedures were effective. Showing that the employer had adopted a policy against harassment, including viable and effective grievance procedures and remedies, and had adequately informed employees of the policy and encouraged them to come forward may support a claim

that the employer should not be liable.

A defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence." Faragher v. City of Boca Raton, 524 U.S. 775, 118 S.Ct. 2275 (1998). "The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Id. at 807, 118 S.Ct. at 2293. "Both elements must be satisfied for the defendant-employer to avoid liability, and the defendant bears the burden of proof on both elements." Frederick v. Sprint/United Management Co., 246 F.3d 1305, 1313 (11th Cir.2001) (citing Faragher, 524 U.S. at 807, 118 S.Ct. at 2293).

"[O]nce a company has developed and promulgated an effective and comprehensive anti-sexual harassment policy, aggressively and thoroughly disseminated the information and procedures contained in the policy to its staff, and demonstrated a commitment to adhering to this policy, it has fulfilled its obligation to make reasonably diligent efforts to 'know what is going on' within the company." Farley v. American Cast Iron Pipe Co., 115 F.3d 1548, 1554 (11th Cir.1997)

First, since October 25, 2001, the Birmingham Public Library has had a policy informing all of its employees that due to public nature of the job, they may be exposed

to images, etc. that they may find to be objectionable:

> "In your work at the Birmingham Public Library, you will see, feel, hear, touch, and encounter situations that may be objectionable to you.  The Library Board strives to establish policies and procedures that balance the Library's responsibility as a public facility with its need to be safe and comfortable for the staff.  Of particular concern in today's Library is the possible exposure of staff to illegal sites on the Internet.  In order to minimize this exposure and to strive for a safe and comfortable working environment, the Library technologically blocks objectionable Internet sites.  Despite the Library's best effort, you may still encounter illegal use of the Internet.  As part of your job, you should be prepared to report the activity and to follow procedures to manage it."  (Exh. 2, p. 312-319, Defendants' Exh. 1).

Second, the Birmingham Public Library under state and federal law is not allowed to provide public internet access to pornographic websites.  The Library has enacted an expansive internet policy which attempts to stop such actions. (Exh. 1, p.36-39, Defendants' Exh. 3, Exh. 2, p. 312-319, Defendants' Exh. 2).  Under the Library's internet policy, a patron can only access the Library's internet by first filling in their name and library card number on the computer screen.  Once logged in, the patron is required to accept the library's internet policy.  If they do not, they are barred from accessing the internet.  If a patron chooses to violate the law and policy, all computers in the library have a filter program call *8e6.com* that filters the patron from viewing pornographic websites. The Library began using internet filters in 1998 and has updated the software continuously.  (Exh. 2, p. 312-319).  Of course, as is technology,

no filter is absolute.

If an individual is caught viewing a pornographic website by a librarian or another patron complains, all librarians, including the Plaintiff, can remotely send a warning message to the patron <u>or</u> completely shut down the objectionable website. Contacting security is also mandated. The Library uses a program called *Cybrary.net* to achieve such. No librarians are required to approach or confront any patron. Librarians have been instructed to call security, if necessary. In addition, any websites that are determined to be in violation of Library's internet policies are reported to the Library's Information Technology Department and from that point on are permanently blocked. The Plaintiff is well aware of this policy. (Exh. 1, p.40-59; Exh. 2, p. 312-319).

Third, the Birmingham Public Library has enacted a Patron Behavior Policy. (Exh. 1, Defendant's Exh. 4; Exh. 2, Exh. 2, p. 312-319, Defendants' Exh. 3). The Birmingham Public Library has security personnel to enforce the patrons polices of the Library. (Exh. 2, p. 86-102, 108-131). The Patron Behavior Policy is made available in tear off pamphlets that are easily distributed to patrons entering the facility. The policy is in effect to control the behavior of patrons in the public facility. The Plaintiff is well aware of this policy. Of note, Rule #19 of the Patron Policy states:

> "Any illegal act of conduct in violation of federal, state, or local law, ordinance or regulation is not permitted."

Of course, no patron behavior policy can stop a patron with the intent on violating the rules and the law. The Birmingham Public Library has adopted policies that it does not permit, condone, encourage, or tolerate harassment or illegal acts of any sort through the use of any means, whether those means are the Internet, books from the library, patrons' activities or materials brought to the library.  The Library publicizes its policies against harassment to all employees and patrons.  As to the single Federal claim, summary judgment for the Defendants is appropriate.

## E.   __Punitive Damages__

Punitive damages are never recoverable against a municipality under Alabama law for state and federal claims.  Code of Alabama §6-11-26, 1975 which states:

> "Punitive damages may not be awarded against the State of Alabama or any county or municipality thereof, or any agency thereof…"

Further, the U.S. Supreme Court has consistently held that "...considerations of history and policy do not support exposing a municipality to punitive damages for the bad-faith actions of its officials."  City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981).  The plaintiff's punitive damages claim is not viable against the Defendants.

30

## CONCLUSION

Based on the undisputed facts, and considering them in the light most favorable to the plaintiff, the plaintiff has failed to prove a Title VII violation.  The Defendants, the City of Birmingham and the Birmingham Library Board, are entitled to Summary Judgment as to the claim.

Respectfully submitted,

*/s/Fredric L. Fullerton, II*
Fredric L. Fullerton, II
Assistant City Attorney

City of Birmingham Law Department
600 City Hall, 710 North 20th Street
Birmingham, Alabama 35203
(205) 254-2369/(205) 254-2502 FAX

## CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2011 I electronically filed the foregoing with the Clerk of the Court using the e-filing system which will send notification to the following:

Adam P. Morel, Esq.
517 Beacon Parkway West
Birmingham, AL. 35209

*/s/Fredric L. Fullerton, II*
Of Counsel

## <u>EXHIBITS</u>

1.    Deposition of Plaintiff Barbara Wilson with Defendants' Exhibits 1-5.

2.    Deposition of Irene Blalock, Director of Birmingham Public Library, with Plaintiff's Exhibits 1-36 and Defendants' Exhibits 1-4.[1]

3.    Deposition of Barry Lollar, Deputy Director of Personnel, City of Birmingham.

4.    <u>Birmingham City Code</u>, Section 2-5-71 et. al.

---

[1] Plaintiff's Exhibit 28 contains pornographic pictures and will be submitted to the court separately.